**Matthew B. Crane** (UTB# 13909)
Ford & Crane PLLC
4161 N. Thanksgiving Way, Suite 300
Lehi, UT 84043
Telephone: (801) 331-8668
Email: matthew.crane@fordcranelaw.com
*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT,
## IN AND FOR THE CENTRAL DISTRICT OF UTAH

| | |
|---|---|
| PAMELA WHITNEY, an individual, CHARVEL CLAWSON, an individual,<br><br>　　　　Plaintiffs,<br>vs.<br><br>COROC/PARK CITY L.L.C., a Delaware Limited Liability Company, John Does I – X, XYZ Corporations and/or Limited Liability Companies I – X.<br><br>　　　　Defendants. | **COMPLAINT**<br><br>Case No. 2:17-CV-154-BCW<br><br>Magistrate Judge Brooke C. Wells |

　　　Plaintiffs Pamela Whitney and Charvel Clawson, by and through their attorney Matthew

B. Crane of Ford & Crane PLLC, hereby file complaint against COROC/Park City L.L.C., a

Delaware limited liability company, John Does I – X, Corporations I – X and/or Limited

Liability Companies I – X, and allege as follows:

1

## INTRODUCTION

1.      This action seeks redress against Defendants in the form of declaratory relief and

a permanent injunction to enjoin Defendants' unlawful violation of Title III of the Americans

with Disabilities Act[1] (the "ADA" or the "Act"), along with attorney's fees and costs as allowed

by the Act[2], as well as causes of action under Utah State law as set forth below. Defendants

maintain illegal architectural barriers to access on their premises and have failed to make

necessary modifications to allow persons with disabilities to fully enjoy the goods and services

offered to the general public as required by the ADA[3].

2.      On July 21, 1990, the United States Department of Justice issued design standards

to be implemented in the construction of new buildings (the "1991 Standard").  These

regulations are titled as the ADA Standards for Accessible Design and are codified at 28 C.F.R.

Part 36.  Appendix A to Part 36 contains the ADA Accessibility Guidelines (referred to herein as

"ADAAG"), which are the technical requirements to which buildings constructed on or after

January 26, 1991 but before September 15, 2010 must adhere to in order to comply with the

ADA.

3.      Even if the non-conforming barriers were constructed prior to 1990, places of

public accommodation must comply with the 1991 Standard if compliance is readily achievable.[4]

---

[1] 42 U.S.C. §12181 *et. seq.*
[2] 42 U.S.C. §12205.
[3] 42 U.S.C. §12182(a).
[4] 42 U.S.C. §12181(2)(A).

4.      On September 15, 2010, the Department of Justice revised the ADA Standards for Accessible Design and the ADAAG, which revisions are codified at 28 C.F.R. Part 36, subpart D and Part 1191 (the "2010 Standard").  The 2010 Standard applies to buildings constructed or altered in a relevant manner after March 15, 2012.  Buildings constructed or altered on or after September 15, 2010 but before March 15, 2012 must comply with either the 1991 or 2010 Standard.

5.      Any site that has undergone relevant renovations since March 2012 must fully comply with the 2010 Standard, rather than maintaining compliance with the 1991 Standard alone.[5]

6.      Title III of the ADA specifically governs barriers to access in places of public accommodation operated by private entities such as Defendants.

7.      Defendants' unlawful violations of the ADA also constitute a nuisance as defined by Utah Code Ann. §78B-6-1101(1) which defines the term as "anything which is injurious to health, indecent, offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." Any person whose health, use of property and/or personal enjoyment is lessened by an obstruction may bring suit to enjoin or abate the nuisance and recover damages under Utah Law.

_____

[5] 28 C.F.R. 36.406(a).

## PARTIES, JURISDICTION AND VENUE

8.      Plaintiff Pamela Whitney is a citizen and resident of the State of Utah.

9.      Plaintiff Charvel Clawson is a citizen and resident of the State of Utah.

10.     Plaintiffs Whitney and Clawson have been diagnosed with multiple sclerosis or "MS" which is an unpredictable, disabling disease of the central nervous system.

11.     As a result of MS, Plaintiff Whitney suffers from several common MS symptoms including cognitive impairments, pain and weakness on right side of her body, numbness in her hands, feet and legs, fatigue, burning and icy hot sensation on the bottom of her feet, tremors and uncontrollable shaking in her hands and legs, depression, difficulty with ambulation, nerve pain on the bottom of her feet and on the right side of her face.

12.     As a result of MS, Plaintiff Clawson suffers from several common MS symptoms including fatigue, weakness, dizziness, pain and difficulties with walking and mobility

13.     Plaintiffs currently receive federal disability benefits.

14.     Because of Plaintiffs' disability and impairments described above, they must use a wheel chair for mobility.

15.     Plaintiffs both have permanent disability parking permits from the State of Utah.

16.     Defendant COROC/PARK CITY L.L.C. ("COROC") is a Delaware limited liability company that owns the property located at 6699 N. Landmark Dr. in Park City, Utah (the "Premises")[6].

---

[6] The Premises is a large shopping center commonly known as the Tanger Outlet Stores.

4

17.     Defendant COROC leases commercial space on the Premises to numerous businesses.

18.     The Premises is a "place of public accommodation" subject to the requirements of Title III of the ADA.

19.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331, §2201 and 42 U.S.C. §12188.

20.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and (c) as Plaintiffs' claims arose in this district and Defendants' conduct business herein.

## FACTUAL ALLEGATIONS

21.     Plaintiffs incorporate the foregoing paragraphs herein.

22.     Title III of the Americans with Disabilities Act expressly prohibits discrimination based on disability in the full and equal enjoyment of the goods, services, privileges or accommodations by any person that owns, leases or operates any place of public accommodation.[7]

23.     Under the ADA, failure to remove architectural barriers to access by disabled persons, where readily achievable, constitutes discrimination.[8]

24.     Each of the Plaintiffs lives with a permanent disability and must use a wheelchair for mobility.

---

[7] 42 U.S.C. §12101.
[8] 42 U.S.C. §12181(2)(A).

25.     Defendants own the Premises and/or lease space or operate a business located at the Premises.  Defendants offer goods and services to the general public and the Premises is a place of public accommodation as defined by C.F.R. §36.104 and 42 U.S.C. §12181(7).

26.     Plaintiffs have visited the Premises and have encountered barriers to access, which make it impossible for them to fully enjoy the goods and services offered.

27.     The architectural barriers to access on Defendants' Premises include, but are not limited to, the following:

**Parking Spaces Located Nearest To The J. Crew Stores**

28.     Accessible parking spaces and their access aisles have surface areas with slopes exceeding the 1:48/2.083% (2010) and 1:50/2% (1991) maximum allowed by ADAAG (with slopes as great as 4.8%).[9]

29.     These designated Accessible spaces lack signs with the International Symbol of Accessibility as required by ADAAG.[10]

**Curb Ramp Located In Front Of The J. Crew Store**

30.     The curb ramp flairs exceed the maximum allowable slope under both standards of ADAAG of 1:10/10% (with slopes as high as 14.0%).[11]

---

[9] 1991 Standard §4.6.3; 2010 Standard §502.4.
[10] 1991 Standard §4.6.4.; 2010 Standard §502.6.
[11] 1991 Standard §4.7.5; 2010 Standard §406.3.

31.     The running slope of the walking surface on the accessible routes to stores located near the curb ramp in front of the J. Crew store exceeds the maximum allowable slope of 1:20/5.0% under ADAAG (with slopes as high as 7.5%).[12]

### Curb Ramp Located In From Of The Motherhood Maternity Store

32.     The curb ramp exceeds the maximum allowable slope under both standards of ADAAG of 1:12/8.33% (with slopes as high as 9.3%).[13]

33.     The curb ramp flairs exceed the maximum allowable slope under both standards of ADAAG of 1:10/10% (with slopes as high as 22.8%).[14]

34.     Due to cracked and deteriorating concrete, the accessible route includes crosses barriers to access that violate rules against changes in level and under ADAAG.[15]

### Parking Spaces Located Nearest To The Gymboree Store

35.     These designated Accessible spaces lack signs with the International Symbol of Accessibility as required by ADAAG.[16]

36.     Accessible parking spaces and their access aisles have surface areas with slopes exceeding the 1:48/2.083% (2010) and 1:50/2% (1991) maximum allowed by ADAAG (with slopes as great as 6.6%).[17]

---

[12] 1991 Standard §§3.5 "Ramp", 4.3.7; 2010 Standard §§106.5 "Ramp", 403.3.
[13] 1991 Standard §4.7.2, 2010 Standard §§406.1, 406.2.
[14] 1991 Standard §4.7.5; 2010 Standard §406.3.
[15] 1991 Standard §4.3; 2010 Standard §303.
[16] 1991 Standard §4.6.4.; 2010 Standard §502.6.
[17] 1991 Standard §4.6.3; 2010 Standard §502.4.

**Curb Ramp Located In Front Of The Gymboree Store**

37.     The curb ramp exceeds the maximum allowable slope under both standards of ADAAG of 1:12/8.33% (with slopes as high as 10.0%).[18]

38.     The curb ramp flairs exceed the maximum allowable slope under both standards of ADAAG of 1:10/10% (with slopes as high as 18.3%).[19]

39.     The running slope of the walking surface on the accessible routes to stores located near the curb ramp in front of the Gymboree store exceeds the maximum allowable slope of 1:20/5.0% under ADAAG (with slopes as high as 6.4%).[20]

**Parking Spaces Located Nearest To The Key Jewelers Store**

40.     Accessible parking spaces and their access aisles have surface areas with slopes exceeding the 1:48/2.083% (2010) and 1:50/2% (1991) maximum allowed by ADAAG (with slopes as great as 7.4%).[21]

41.     These designated accessible spaces lack signs with the International Symbol of Accessibility as required by ADAAG.[22]

**Curb Ramp Located In From Of The Skullcandy Store**

42.     The curb ramp exceeds the maximum allowable slope under both standards of ADAAG of 1:12/8.33% (with slopes as high as 9.1%).[23]

---

[18] 1991 Standard §4.7.2, 2010 Standard §§406.1, 406.2.
[19] 1991 Standard §4.7.5; 2010 Standard §406.3.
[20] 1991 Standard §§3.5 "Ramp", 4.3.7; 2010 Standard §§106.5 "Ramp", 403.3.
[21] 1991 Standard §4.6.3; 2010 Standard §502.4.
[22] 1991 Standard §4.6.4.; 2010 Standard §502.6.

43.     The curb ramp flairs exceed the maximum allowable slope under both standards of ADAAG of 1:10/10% (with slopes as high as 12.6%).[24]

44.     The accessible route from the curb ramp to nearby stores includes sections which exceed the maximum allowable cross-slope of 1:50/2.0% (1991 Standard) and 1:48/2.0833% (2010 Standard) under ADAAG (with slopes as great as 14.84%).[25]

**Curb Ramp Located In Front Of The American Eagle Outlet Store**

45.     The curb ramp exceeds the maximum allowable slope under both standards of ADAAG of 1:12/8.33% (with slopes as high as 9.0%).[26]

46.     The curb ramp flairs exceed the maximum allowable slope under both standards of ADAAG of 1:10/10% (with slopes as high as 17.2%).[27]

47.     Due to cracked and deteriorating concrete, the accessible route includes crosses barriers to access that violate rules against changes in level and under ADAAG.[28]

---

[23] 1991 Standard §4.7.2, 2010 Standard §§406.1, 406.2.
[24] 1991 Standard §4.7.5; 2010 Standard §406.3.
[25] 1991 Standard § 4.3.7; 2010 Standard §403.3.
[26] 1991 Standard §4.7.2, 2010 Standard §§406.1, 406.2.
[27] 1991 Standard §4.7.5; 2010 Standard §406.3.
[28] 1991 Standard §4.3; 2010 Standard §303.

**Parking Spaces Located Closest To The Eddie Bauer Outlet Store**

48.     Accessible parking spaces and their access aisles have surface areas with slopes exceeding the 1:48/2.083% (2010) and 1:50/2% (1991) maximum allowed by ADAAG (with slopes as great as 4.3%).[29]

49.     These designated accessible spaces lack signs with the International Symbol of Accessibility as required by ADAAG.[30]

50.     The curb ramp exceeds the maximum allowable slope under both standards of ADAAG of 1:12/8.33% (with slopes as high as 9.6%).[31]

51.     The accessible route from the curb ramp to nearby stores includes sections which exceed the maximum allowable cross-slope of 1:50/2.0% (1991 Standard) and 1:48/2.0833% (2010 Standard) under ADAAG (with slopes as great as 14.84%).[32]

**Parking Spaces Located Closest To The Dress Barn Store**

52.     Accessible parking spaces and their access aisles have surface areas with slopes exceeding the 1:48/2.083% (2010) and 1:50/2% (1991) maximum allowed by ADAAG (with slopes as great as 3.9%).[33]

---

[29] 1991 Standard §4.6.3; 2010 Standard §502.4.
[30] 1991 Standard §4.6.4.; 2010 Standard §502.6.
[31] 1991 Standard §4.7.2, 2010 Standard §§406.1, 406.2.
[32] 1991 Standard § 4.3.7; 2010 Standard §403.3.
[33] 1991 Standard §4.6.3; 2010 Standard §502.4.

**Curb Ramp Located In Front Of The Dress Barn Store**

53.     The curb ramp exceeds the maximum allowable slope under both standards of ADAAG of 1:12/8.33% (with slopes as high as 11.4%).[34]

54.     The curb ramp flairs exceed the maximum allowable slope under both standards of ADAAG of 1:10/10% (with slopes as high as 23.2%).[35]

55.     The running slope of the walking surface on the accessible routes to stores located near the curb ramp in front of the Dress Barn store exceeds the maximum allowable slope of 1:20/5.0% under ADAAG (with slopes as high as 6.7%).[36]

**Curb Ramp Located In Front Of The Go! Calendars Games & Toys Store**

56.     Due to cracked and deteriorating concrete, the accessible route includes crosses barriers to access that violate rules against changes in level and under ADAAG.[37]

57.     The running slope of the walking surface on the accessible routes to the entrance to the Go! Calendars Games & Toys store exceeds the maximum allowable slope of 1:20/5.0% under ADAAG (with slopes as high as 10.4%).[38]

---

[34] 1991 Standard §4.7.2, 2010 Standard §§406.1, 406.2.
[35] 1991 Standard §4.7.5; 2010 Standard §406.3.
[36] 1991 Standard §§3.5 "Ramp", 4.3.7; 2010 Standard §§106.5 "Ramp", 403.3.
[37] 1991 Standard §4.3; 2010 Standard §303.
[38] 1991 Standard §§3.5 "Ramp", 4.3.7; 2010 Standard §§106.5 "Ramp", 403.3.

**Parking Spaces Located Nearest Justice And Express Factory Outlet Stores**

58.    Accessible parking spaces and their access aisles have surface areas with slopes exceeding the 1:48/2.083% (2010) and 1:50/2% (1991) maximum allowed by ADAAG (with slopes as great as 5.6%).[39]

59.    These Accessible spaces lack signs with the International Symbol of Accessibility as required by ADAAG.[40]

**Curb Ramp Located In Front Of The Levis Store**

60.    The curb ramp exceeds the maximum allowable slope under both standards of ADAAG of 1:12/8.33% (with slopes as high as 11.1%).[41]

61.    The curb ramp flairs exceed the maximum allowable slope under both standards of ADAAG of 1:10/10% (with slopes as high as 14.6%).[42]

**Parking Spaces Located Nearest To Tommy Hilfiger Store**

62.    Accessible parking spaces and their access aisles have surface areas with slopes exceeding the 1:48/2.083% (2010) and 1:50/2% (1991) maximum allowed by ADAAG (with slopes as great as 6.0%).[43]

63.    These designated accessible spaces lack signs with the International Symbol of Accessibility as required by ADAAG.[44]

---

[39] 1991 Standard §4.6.3; 2010 Standard §502.4.
[40] 1991 Standard §4.6.4.; 2010 Standard §502.6.
[41] 1991 Standard §4.7.2, 2010 Standard §§406.1, 406.2.
[42] 1991 Standard §4.7.5; 2010 Standard §406.3.
[43] 1991 Standard §4.6.3; 2010 Standard §502.4.

64.     The running slope of the walking surface on the accessible route from this accessible parking to the curb ramp near the entrance of the Tommy Hilfiger store exceeds the maximum allowable slope of 1:20/5.0% under ADAAG (with slopes as high as 8.4%).[45]

**Curb Ramp Located In Front Of The Tommy Hilfiger Store**

65.     The curb ramp exceeds the maximum allowable slope under both standards of ADAAG of 1:12/8.33% (with slopes as high as 9.4%).[46]

66.     The curb ramp flairs exceed the maximum allowable slope under both standards of ADAAG of 1:10/10% (with slopes as high as 12.9%).[47]

**Parking Spaces Located Nearest To Brooks Brothers Store**

67.     Accessible parking spaces and their access aisles have surface areas with slopes exceeding the 1:48/2.083% (2010) and 1:50/2% (1991) maximum allowed by ADAAG (with slopes as great as 7.3%).[48]

68.     These designated accessible spaces lack signs with the International Symbol of Accessibility as required by ADAAG.[49]

69.     Due to uneven concrete, the accessible route includes crosses barriers to access that violate rules against changes in level and under ADAAG.[50]

---

[44] 1991 Standard §4.6.4.; 2010 Standard §502.6.
[45] 1991 Standard §§3.5 "Ramp", 4.3.7; 2010 Standard §§106.5 "Ramp", 403.3.
[46] 1991 Standard §4.7.2, 2010 Standard §§406.1, 406.2.
[47] 1991 Standard §4.7.5; 2010 Standard §406.3.
[48] 1991 Standard §4.6.3; 2010 Standard §502.4.
[49] 1991 Standard §4.6.4.; 2010 Standard §502.6.
[50] 1991 Standard §4.3; 2010 Standard §303.

70.     The running slope of the walking surface on the accessible routes to the White House Black Market store exceeds the maximum allowable slope of 1:20/5.0% under ADAAG (with slopes as high as 8.3%).[51]

**Playground Located In The Center Of The Main Parking Lot**

71.     The curb ramp exceeds the maximum allowable slope under both standards of ADAAG of 1:12/8.33% (with slopes as high as 22.5%).[52]

**Parking Spaces Located In Front Of The Bass Store**

72.     Accessible parking spaces and their access aisles have surface areas with slopes exceeding the 1:48/2.083% (2010) and 1:50/2% (1991) maximum allowed by ADAAG (with slopes as great as 5.8%).[53]

73.     The running slope of the walking surface on the accessible routes to stores located near the curb ramp in front of the Bass store exceeds the maximum allowable slope of 1:20/5.0% under ADAAG (with slopes as high as 9.3%).[54]

74.     The accessible route from the curb ramp to nearby stores includes sections which exceed the maximum allowable cross-slope of 1:50/2.0% (1991 Standard) and 1:48/2.0833% (2010 Standard) under ADAAG (with slopes as great as 6.1%).[55]

---

[51] 1991 Standard §§3.5 "Ramp", 4.3.7; 2010 Standard §§106.5 "Ramp", 403.3.
[52] 1991 Standard §4.7.2, 2010 Standard §§406.1, 406.2.
[53] 1991 Standard §4.6.3; 2010 Standard §502.4.
[54] 1991 Standard §§3.5 "Ramp", 4.3.7; 2010 Standard §§106.5 "Ramp", 403.3.
[55] 1991 Standard § 4.3.7; 2010 Standard §403.3.

**Parking Spaces Located Not Directly In Front Of But Near The Entrance To The Bass Store**

75.     Accessible parking spaces and their access aisles have surface areas with slopes exceeding the 1:48/2.083% (2010) and 1:50/2% (1991) maximum allowed by ADAAG (with slopes as great as 6.1%).[56]

**Parking spaces located nearest to the Old Navy store**

76.     Accessible parking spaces and their access aisles have surface areas with slopes exceeding the 1:48/2.083% (2010) and 1:50/2% (1991) maximum allowed by ADAAG (with slopes as great as 3.4%).[57]

77.     These designated accessible spaces lack signs with the International Symbol of Accessibility as required by ADAAG.[58]

**Curb Ramp Located In front Of The Old Navy Store**

78.     The curb ramp exceeds the maximum allowable slope under both standards of ADAAG of 1:12/8.33% (with slopes as high as 9.0%).[59]

79.     The curb ramp flairs exceed the maximum allowable slope under both standards of ADAAG of 1:10/10% (with slopes as high as 18.9%).[60]

---

[56] 1991 Standard §4.6.3; 2010 Standard §502.4.
[57] 1991 Standard §4.6.3; 2010 Standard §502.4.
[58] 1991 Standard §4.6.4.; 2010 Standard §502.6.
[59] 1991 Standard §4.7.2, 2010 Standard §§406.1, 406.2.
[60] 1991 Standard §4.7.5; 2010 Standard §406.3.

80.     The running slope of the walking surface on the accessible routes to stores located near the curb ramp in front of the Old Navy store exceeds the maximum allowable slope of 1:20/5.0% under ADAAG (with slopes as high as 7.6%).[61]

**Parking Spaces Located In Front Of The Old Navy Store**

81.     Accessible parking spaces and their access aisles have surface areas with slopes exceeding the 1:48/2.083% (2010) and 1:50/2% (1991) maximum allowed by ADAAG (with slopes as great as 4.9%).[62]

82.     The running slope of the walking surface on the accessible routes to stores located near the curb ramp in front of the Old Navy store exceeds the maximum allowable slope of 1:20/5.0% under ADAAG (with slopes as high as 10.2%).[63]

83.     Removal of the architectural barriers to access is readily achievable and could be completed by Defendants without significant difficulty or expense.

84.     No notice to Defendants is required under ADAAG as a result of Defendants' failure to cure the violations contained herein during the many decades since ADAAG's adoption.  Congress did not require disabled people to beg for access— the duty lies with the property owner and business to comply with the law.

85.     Plaintiff Whitney has visited the Premises many times. Some of stores that she has shopped at most frequently at the Premises include Oshkosh, J.Crew, Dress Barn, Jusstice,

---

[61] 1991 Standard §§3.5 "Ramp", 4.3.7; 2010 Standard §§106.5 "Ramp", 403.3.
[62] 1991 Standard §4.6.3; 2010 Standard §502.4.
[63] 1991 Standard §§3.5 "Ramp", 4.3.7; 2010 Standard §§106.5 "Ramp", 403.3.

Brooks Brothers, Levis, American Eagle Outfitters, Go! Calendars Games & Toys and Old Navy although she has visited most of the stops at the Premises and has encountered the barriers described in this Complaint. She regularly shops at the Premises and plans to return.

86.     Plaintiff Clawson has visited the Premises many times. Some of stores that she has shopped at most frequently at the Premises include White House Black Market, Eddie Bauer, Tommy Hilfiger, Ann Taylor Factory Store and Coach although she has visited other shops at the Premises and has encountered the barriers described in this Complaint. She regularly shops at the Premises and plans to return.

87.     The barriers to access on the Premises exclude persons with disabilities such as Plaintiffs from full and equal enjoyment of the goods, services, privileges and accommodations offered by Defendants.

88.     As a result of Defendants' unlawful architecture and failure to remedy, Plaintiffs and other disabled persons are subject to ongoing discrimination due to their disability, as well as embarrassment, distress, indignity and limitations to their personal freedom.

89.     Plaintiffs' knowledge of the barriers described in this Complaint deterred Plaintiffs' access to, or full use and enjoyment of the Premises.

90.     Plaintiffs believe that the Premises has additional architectural barriers on the interior of the Premises that violate ADAAG and which would require additional inspection and access to the interior of the Premises, which barriers include but are not limited to problems with bathroom facilities. Each Plaintiff has had difficulty reaching and using the bathroom facilities and expressed the belief that the bathroom facilities did not provide sufficient space to maneuver

in a wheel chair and reach all the necessary amenities. Plaintiffs lack the technical experience

and ability to use measuring instruments themselves and did not want to disrupt the business

operations at the Premises by having their counsel do so without permission from the Defendants

and so only exterior measurements were performed at the Premises that would not alarm or

interfere with other patrons of the Premises. Plaintiffs experienced difficulty with the areas

described in this paragraph and therefore have a reasonable belief that they include architectural

barriers. Counsel would like to meet representatives of the Defendants at the Premises to do a

full inspection to document other violations of ADAAG. Plaintiffs intend to make a motion for

the inspection of real property, seeking a full inspection of the Premises to allow more specific

pleading regarding violations of ADAAG not specifically detailed herein.

**FIRST CAUSE OF ACTION**
**Injunction for Violation of Title III of the ADA**

91.     Plaintiffs incorporate the foregoing paragraphs herein.

92.     Title III of the Americans with Disabilities Act expressly prohibits discrimination

on the basis of disability in the full and equal enjoyment of the goods, services, privileges or

accommodations by any person owns, leases or operates any place of public accommodations.[64]

93.     Defendants own, lease and/or operate a place of public accommodation and are

subject to the requirements of Title III of the ADA[65].

94.     Under the ADA, failure to remove architectural barriers to access by disabled

---

[64] 42 U.S.C. §12101.
[65] 28 C.F.R. §36.104; 42 U.S.C. §12181(7).

persons, where readily achievable, constitutes discrimination.[66]

95.     The Department of Justice defined "readily achievable" as meaning "easily accomplishable and able to be carried out without much difficulty or expense"[67].

96.     Defendants have engaged in discriminatory practices by: 1) failing to construct their facility in a way that is readily accessible to persons with disabilities, 2) failing to comply with ADA guidelines when remodeling facilities, 3) failing to remove architectural barriers to access, where removal is readily achievable and 4) operating their facility in a way which does not allow disabled persons to fully and equally the goods and services provided to the general public.

97.     Defendants have continued their discriminatory practices against persons with disabilities by refusing or otherwise failing to remove architectural barriers to access.

98.     Because of Defendants' unlawful conduct, Plaintiffs and other disabled persons have been subjected to discrimination by being unable to fully and equally access the goods, services and facilities offered to the general public, to the fullest extent possible.  Plaintiffs and other disabled persons continue to be irreparably harmed as the discrimination is ongoing.

99.     Plaintiffs are entitled to a permanent injunction requiring Defendants to correct each violation of the ADA identified herein pursuant to 42 U.S.C. §12188(a).

---

[66] 42 U.S.C. §12181(2)(A).
[67] 28 C.F.R. 6.304(a).

100.    Plaintiffs were required to retain counsel to pursue this action and are entitled to an award of reasonable attorney's fees and costs for bringing this suit, as specifically allowed by 42 U.S.C. §12205.

## SECOND CAUSE OF ACTION
## Declaratory Relief

101.    Plaintiffs incorporate the foregoing paragraphs herein.

102.    Plaintiffs seek declaratory relief pursuant to 28 U.S.C. §2201.

103.    Plaintiffs request declaratory judgment: 1) declaring an actual controversy between Plaintiffs and Defendants with regard to each of Defendants' violations of the ADA, and 2) specifying Plaintiffs' rights as disabled persons under the ADA as they pertain to Defendants' facility.

## THIRD CAUSE OF ACTION
## Nuisance Under Utah Code Ann. 78B-6-1101, *et. seq.*

104.    Plaintiffs incorporate the foregoing paragraphs herein.

105.    Pursuant to Utah Code Ann. §78B-6-1101(1), "A nuisance is anything which is injurious to health, indecent, offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property. A nuisance may be the subject of an action."

106.    "An action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by the nuisance."[68] "Upon judgment, the nuisance may be enjoined or abated, and damages may be recovered."[69]

107.    Defendants' failure to remove architectural barriers to access by persons with disabilities, as required by the ADA, has created a public nuisance which injuriously affects persons with disabilities and interferes with their personal enjoyment.

108.    Plaintiffs' personal enjoyment of life has been lessened by the nuisance, thus they are entitled to bring suit and recover damages, including damages for pain and suffering.

109.    Plaintiffs are entitled to an award of attorney's fees and costs incurred in bringing this suit under Utah Code Ann. §78B-6-1114.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray judgment against the Defendants as follows:

A.      For a permanent injunction requiring Defendants to correct each violation of the ADA identified herein pursuant to 42 U.S.C. §12188(a) within a reasonable time but, in no event, greater than six (6) months;

B.      For an order of the Court: 1) declaring that there is an actual controversy between Plaintiffs and Defendants with regard to each of Defendants' violations of the ADA, and 2)

---

[68] Utah Code Ann. §78B-6-1101(6).
[69] Utah Code Ann. §78B-6-1102(2).

specifying Plaintiffs' rights as disabled persons under the ADA as they pertain to Defendants' facility;

C.      For a permanent injunction enjoining Defendant from maintaining the nuisance on its premises pursuant to Utah Code Ann. §78B-6-1102(2).

D.      For an award of compensatory and punitive damages (in an amount to be determined at trial) to Plaintiffs under Utah Code Ann. §78B-6-1102(2) for the nuisance created by Defendants;

E.      For an award compensating Plaintiffs for damages, including but not limited to pain and suffering incurred due to the illegal architecture and public nuisance; and

F.      For an award of Plaintiffs' attorney's fees and costs of bringing this suit as authorized by the ADA at 42 U.S.C. §12205 and the Utah Code on public nuisances at §78B-6-1114; and

G.      For any and all other relief the Court deems just and equitable.

DATED this 3rd day of March, 2017.

FORD & CRANE PLLC


/s/ Matthew B. Crane
Matthew B. Crane (UTB# 13909)
*Attorney for Plaintiff*